UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ALEJANDRO JIMINEZ,

                Plaintiff,

-v-                                                            No. 17 CV 2844-LTS-JLC

CREDIT ONE BANK, N.A., NCO
FINANCIAL SYSTEMS, INC., and
ALORICA, INC.,

                Defendants.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

Plaintiff Alejandro Jiminez ("Plaintiff") brings this action under the Telecom Consumer Protection Act (47 U.S.C. section 227) against Defendants Credit One Bank, N.A., Alorica, Inc., and NCO Financial Systems, Inc. ("Defendants"). Defendants move for summary judgment pursuant to Federal Rule of Civil Procedure 56, following the Second Circuit's recent decision to vacate and remand this Court's previous judgment that was entered in Plaintiff's favor. (Docket entry nos. 160, 161, 166, 172.) The Court has jurisdiction of this action pursuant to 28 U.S.C. section 1331. The Court has considered carefully the parties' submissions, and, for the following reasons, Defendants' motions for summary judgment are granted.

### BACKGROUND

The following facts are undisputed unless otherwise indicated.[1] Defendant Credit

---

[1] Facts characterized as undisputed are identified as such in the parties' statements pursuant to S.D.N.Y. Local Civil Rule 56.1, or drawn from evidence as to which there has been no contrary, non-conclusory factual proffer. Citations to the parties' respective Local Civil Rule 56.1 Statements ("Def. 56.1 St." or "Pl. 56.1 St.") incorporate by reference the parties' citations to underlying evidentiary submissions.

One Bank is a national banking association. (Docket entry no. 1 ¶ 5.) In September 2016, an individual ("Ms. Doe") applied for, and obtained, a credit card account with Credit One ("the bank"). (Docket entry no. 168 ("Def. 56.1 St.") ¶ 1.) As part of the credit card application, she listed her telephone number (the "Subject Number"). (Id. ¶ 2.) After Credit One approved the application, the bank mailed Ms. Doe a credit card along with the bank's standard cardholder agreement, pursuant to which she authorized the bank or its agents to contact her "at any phone number . . . at any time, for any lawful purpose." (Id. ¶¶ 3-4.) Sometime thereafter, Ms. Doe defaulted on her credit card account, and Credit One authorized Expert Global Solutions Financial Care ("EGS") to collect the unpaid balance.[2] (Id. ¶ 7.) Between January 2017 and March 27, 2017, EGS placed upwards of 300 phone calls[3] to the Subject Number, attempting to collect the unpaid balance on Ms. Doe's account. (Docket entry no. 169-2.) However, at the time that these calls were placed, the Subject Number no longer belonged to Ms. Doe—it belonged to Plaintiff. (Docket entry no. 82 ¶ 13.) Plaintiff obtained the Subject Number when he purchased a new cell phone plan in approximately January 2017. (Docket entry no. 181-2, ("Pl. Depo. Tr.") at 20.) It is undisputed that Plaintiff was never a cardholder with Credit One, and that he never had any prior relationship with Credit One (apart from receiving the subject phone calls).

Plaintiff filed suit in April 2017, alleging that Defendants had violated the Telephone Consumer Protection Act ("TCPA") by placing auto-dialed phone calls to his cell

---

[2]   Defendant NCO became EGS in 2015, and EGS was acquired by Defendant Alorica in 2016. (Docket entry no. 50 ¶ 8 n.2)

[3]   The parties dispute the precise number of calls that were received by Plaintiff and the number of calls that successfully connected to a live party. (See docket entry no. 51-1, ("Jiminez Dep.") at 52:19-53:19; 65:3-66:3; 77:6-23; 84:23- 86:19.) The parties agree that EGS stopped calling the Subject Number on March 27, 2017. (Def 56.1 St. ¶ 14.)

phone without his consent.[4]  (Docket entry no. 1.)  In March 2019, the Court issued a

Memorandum Opinion and Order which granted Plaintiff's motion for summary judgment, after

concluding that Defendants had used a prohibited automated system to place calls to Plaintiff's

cell without his consent.  (Docket entry no. 105 (the "Opinion").)  In reaching this conclusion,

the Court analyzed whether the phone system utilized by Defendants qualified as an "auto-

dialer," which is statutorily defined as "equipment which has the capacity—(A) to store or

produce telephone numbers to be called, using a random or sequential number generator; and (B)

to dial such numbers."  47 U.S.C. § 227(a)(1) (Westlaw through P.L. 117-177).

    The undisputed evidence established that the calls to Plaintiff's phone number

were made using Defendants' LiveVox 3.2 ("LiveVox") dialing system, and its Quick Connect

feature.  (Opinion at 3.)  To use LiveVox, an agent uploads a curated list of telephone numbers

provided by Credit One into the system, and the system calls numbers by going down the list.

(Id.)  LiveVox does not generate phone numbers on its own.  (Id. at 3-4.)  LiveVox is, however,

"automatic" in the sense that it "uses a proprietary algorithm to determine how many calls to

automatically place in order to keep customer service representatives fully occupied at all times,"

and "Quick Connect adjusts the number of calls that are automatically placed based on the

number of available customer service representatives at any given time."  (Opinion at 13.)

    A telecom expert retained by Plaintiffs, Randall Snyder, testified that LiveVox

"has the capacity" to store and dial randomly or sequentially generated numbers because the

agent, if they "so choose, can easily upload random or sequentially generated telephone

---

[4]   To state a claim under the TCPA, a plaintiff must show that: "(1) a call was placed to a cell or wireless phone; (2) by use of any automatic dialing system . . . and (3) without prior consent of the recipient."  Jennings v. Cont'l Serv. Grp., Inc., 239 F. Supp. 3d 662, 665 (W.D.N.Y. 2017).

numbers" into the LiveVox dialing system.  (Docket entry no. 81-3 ¶¶ 31-35.)  For example, Snyder noted that an agent could use Microsoft Excel to generate a list of random numbers, and then upload those numbers "as a campaign file into the LiveVox dialing system."  (Id.)  Defendants' telecom expert, Ray Horak, disagreed with Snyder's testimony, testifying that LiveVox did not have the capacity to generate random or sequential numbers, and that the phone numbers used by Defendant were "not randomly or sequentially created, but rather, [were] obtained from Credit One," which provided agents with a pre-approved "campaign database or list" of numbers to be called.  (Docket entry no. 72-1 ¶¶ 5, 53-54.)  Horak stated that it would be "inaccurate to assert" that one could integrate outside-generated random numbers "into the LiveVox platform without the consent of LiveVox," and noted that "EGS did not write such a program, nor would anyone do so in modern times."  (Id. ¶ 66-67.)

   Based on this evidence (and the then-current caselaw), the Court issued an opinion in March 2019 holding that "LiveVox is an [auto-dialer] within the meaning of the TCPA."  (Opinion at 14.)  To reach this conclusion, the Court relied on three orders issued by the Federal Communications Commission ("FCC"),[5] all of which addressed which types of equipment qualify as an auto-dialer under the TCPA.  Specifically, these FCC orders instructed that a certain piece of equipment called a "predictive dialer"[6] constituted an auto-dialer and thus

---

[5]  In re Rules & Regulations Implementing the Tel. Consumer Protection Act of 1991, 18 FCC Rcd. 14014, 14093 (2003) (the "2003 Order"); In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 23 FCC Rcd. 559, 566 (2008) (the "2008 Ruling"); In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 FCC Rcd. 15391, 15392 (2012) (the "2012 Order"); (collectively, "the FCC orders").

[6]  A "predictive dialer" is "an automated dialing system that uses a complex set of algorithms to automatically dial consumers' telephone numbers in a manner that 'predicts' the time when a consumer will answer the phone and a telemarketer will be available to take the call."  2003 Order at 14022 n.31.

was "subject to the TCPA's restrictions on the use of auto-dialers." (Opinion at 7.) The Court concluded that LiveVox qualified as a predictive dialer because it "uses a proprietary algorithm to determine how many calls to automatically place" and "adjusts the number of calls that are automatically placed based on the number of available customer service representatives at any given time." (Opinion at 13.) Thus, because the competent evidence demonstrated that Defendants' LiveVox system fit the FCC's definition of a predictive dialer, and because the FCC orders had declared that all predictive dialers were auto-dialers under the TCPA, the Court concluded that "Plaintiff is entitled to judgment as a matter of law on his claim for TCPA liability." (Opinion at 14.)

In December 2019, Defendants appealed this Court's decision to the Second Circuit. (Docket entry no. 149.) In April 2021, before the Second Circuit had a chance to rule on Defendants' appeal, the Supreme Court made its ruling in Facebook v. Duguid, 141 S. Ct. 1163 (2021), holding that, to qualify as an auto-dialer, "the equipment in question must use a random or sequential number generator." Id. at 1170. Accordingly, in April 2021, the Second Circuit vacated and remanded this Court's decision "for further proceedings consistent with the decision of the Supreme Court in Facebook[.]" (Docket entry no. 159.)

Upon remand, this Court ordered the parties to "renew their summary judgment motions on updated papers, including their analysis of the impact of Facebook . . . based upon the existing factual record." (Docket entry no. 165.) Defendants have since submitted renewed summary judgment motions (docket entry nos. 166, 172) asserting that they are entitled to judgment as a matter of law under Facebook, and Plaintiff has submitted papers in opposition (docket entry nos. 177, 180).

DISCUSSION

Summary judgment is warranted when there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A fact is considered material when it "might affect the outcome of the suit under the governing law," and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court views the evidence in the light most favorable to the nonmoving party, drawing all inferences in their favor. Ashley v. City of New York, 992 F.3d 128, 136 (2d Cir. 2021). Summary judgment is also appropriate when the movant "submit[s] evidence that negates an essential element of the non-moving party's claim." Nick's Garage, Inc. v. Progressive Cas. Ins. Co., 875 F.3d 107, 114 (2d Cir. 2017).

The TCPA provides, in relevant part, that "[i]t shall be unlawful . . . to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system . . . to any telephone assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii) (Westlaw through P.L. 117-177). To state a TCPA claim, a plaintiff must show that: (1) a call was placed to a cellular phone (2) by the use of an auto-dialer, and (3) without the prior consent of the recipient. Jennings, 239 F. Supp. 3d at 665. If a plaintiff fails to establish any one of the three elements, then summary judgment is appropriate because the nonmoving party has failed to establish the existence of an element essential to that party's case. Celotex, 477 U.S. at 322; cf. Oparaji v. Home Retention Corp., No. 21-CV-2758-ENV-LB, 2022 WL 987560, at *8 (E.D.N.Y. Jan. 11, 2022) (dismissing plaintiff's TCPA claim because the calls were not placed using an auto-dialer).

Here, the first element of Plaintiff's TCPA claim is met because it is undisputed that Defendants placed calls to Plaintiff's cell phone. The second element—whether Defendants used an auto-dialer to place these calls—is the primary focus of contention in this case. An auto-dialer is defined by the TCPA as "equipment which has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1) (Westlaw through P.L. 177-177).

In its 2021 Facebook decision, the Supreme Court interpreted the statutory term "auto-dialer." Facebook, 141 S. Ct. at 1168. The plaintiff in Facebook alleged that Facebook violated the TCPA "by maintaining a database that stored phone numbers and programming its equipment to send automated text messages to those numbers." Id. Facebook argued that the plaintiff had failed to establish that it had used an auto-dialer, because "he did not claim Facebook sent text messages to numbers that were randomly or sequentially generated," instead, he had only claimed that Facebook "sent targeted, individualized texts to numbers linked to specific accounts." Id.

The Supreme Court granted certiorari, in order to resolve a circuit split "regarding whether an auto-dialer must have the capacity to generate random or sequential phone numbers." Id. The parties offered competing interpretations of the statutory text—Facebook argued that "the clause 'using a random or sequential number generator' modifies both verbs that precede it ('store' and 'produce')," while the plaintiff argued that the clause modified "only the closest [verb] ('produce')." Id. at 1169. Employing canons of statutory construction and rules of grammar, the Court ultimately concluded that Facebook's interpretation was the correct one— i.e., that the phrase "'using a random or sequential number generator' modifies both 'store' and 'produce.'" Id. at 1169-70. The Court summed up its holding thusly: "Congress' definition of

an auto-dialer requires that in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator." Id. at 1170.

As further support for its conclusion, the Supreme Court noted that its interpretation of the term was consistent with the legislative intent behind the TCPA, which was to "target a unique type of telemarketing equipment that risks dialing emergency lines randomly or tying up all the sequentially numbered lines at a single entity." Id. at 1171. "Expanding the definition of an auto-dialer to encompass any equipment that merely stores and dials telephone numbers," the Court observed, "would take a chainsaw to these nuanced problems when Congress meant to use a scalpel." Id.

The plaintiff in Facebook had argued in favor of a broader definition of an auto-dialer (asking the Court to focus on "whether [the equipment] has the 'capacity to dial numbers without human intervention'"); the Court rejected that argument, stating that the plaintiff's broad interpretation found no support in the statutory text. Id. at 1172-73. The Court concluded by reiterating its holding—that "a necessary feature of an auto-dialer under [the TCPA] is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called." Id. at 1173. Because Facebook's login notification system "[did] not use such technology," the Court held that there could be no liability under the TCPA. Id. at 1170.

The parties in this case disagree as to whether and how the Facebook case applies to Plaintiff's claims for TCPA liability. Defendants assert that Facebook squarely applies, while Plaintiff makes several arguments attempting to distinguish Facebook. First, Plaintiff argues that Facebook is inapposite because it dealt with automated text messages, rather than automated phone calls. The Court does not find this to be a dipositive difference, because unwanted text messages are as much within the ambit of the TCPA as unwanted phone calls are. See

Campbell-Ewald Co. v. Gomez, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of [the TCPA].").

Second, Plaintiff argues that Facebook is inapposite because it did not involve predictive dialers, which are featured in the instant case. Plaintiff contends that predictive dialers are analyzed under an entirely different scheme (i.e., the scheme put forth in the FCC orders), which does not depend upon the plain language of the statute. Defendants, on the other hand, assert that it is irrelevant whether or not a predictive dialer was used in this case, as the Supreme Court's interpretation of a statute takes precedence over an agency's interpretation of that same statute. See, e.g., City of Arlington v. FCC, 569 U.S. 290, 297-301 (2013). The Court concludes that it is bound by the Supreme Court's holding that a device "must use a random or sequential number generator" to be an auto-dialer within the meaning of the statute. Facebook, 141 S. Ct. at 1170. Plaintiff's argument that the Court should look to the agency's opinion, which was not based on the text of the statute, is unpersuasive. See United States v. Aguiar, 737 F.3d 251, 261 (2d Cir. 2013) ("In the context of statutory interpretation, 'binding precedent' refers to the precedent of . . . the Supreme Court.").

The Court thus turns to the question of whether Plaintiff's claims for TCPA liability are consistent with Facebook's definition of an auto-dialer. On this issue, the parties put forth competing constructions of Facebook's holding, seizing on some seemingly inconsistent language that the Supreme Court used in describing its holding. Plaintiff argues that the pertinent point is the equipment's *capacity*—relying on the Supreme Court's statement that an auto-dialer "must have the *capacity* either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator." Facebook, 141 S. Ct. at 1167 (emphasis added). Defendants, however, focus on how

the equipment was *actually used*—relying on the Supreme Court's differently-worded statement that "Congress' definition of an auto-dialer requires that in all cases . . . the equipment in question *must use* a random or sequential number generator." Id. at 1170 (emphasis added). Plaintiff argues that the factual record in this case creates a triable issue of fact as to whether the LiveVox system had such a number-generating capacity, whereas Defendants argue that the system's capacity is irrelevant, because the record shows that the system was never actually used in such a manner.

A recent Third Circuit case is informative in resolving this "use" versus "capacity" debate. In Panzarella v. Navient Sols., Inc., the plaintiffs alleged that the defendant loan servicer used an auto-dialer to call their cellphones without prior consent, and the parties put forward competing interpretations of the Facebook opinion to support their claims. 37 F.4th 867, 870, 874 (3d Cir. 2022). The defendants maintained that, under Facebook, "a dialing system must *presently* and *actually* use a random and sequential telephone number generator" to qualify as an auto-dialer—and, because their system did not use such technology, there could be no TCPA liability. Id. at 874. The plaintiffs disagreed, focusing on whether the system had the capacity to store or produce random or sequentially generated phone numbers. Id. at 873-75.

The Third Circuit first explained that the parties had misapprehended the holding in Facebook—the Supreme Court aimed to resolve a circuit split as to whether the statutory language of "using a random or sequential number generator" modifies the words "produce" or "store" or both. Id. at 874-75. Relying on canons of construction, the Supreme Court held that an auto-dialer "must have the capacity *either* to *store* a telephone number using a random or sequential generator *or* to *produce* a telephone number using a random or sequential number generator." Id. at 875 (quoting Facebook, 141 S. Ct. at 1167, 1169-70 (emphasis added)). In

other words, the main debate in Facebook was about "store" versus "produce;" not about "use" versus "capacity." Id.

The Third Circuit noted that the "use" versus "capacity" issue "was not even before the [Supreme] Court," as evidenced by the "inconsistent" language that the Supreme Court used to describe its holding. Id. at 875. The Third Circuit observed that, in some places, the Supreme Court "restated the full [auto-dialer] definition—including 'capacity'—when it summarized its holding . . . but in other places, it described the [auto-dialer] definition in terms of the 'use' of a random or sequential number generator[.]" Id. Thus, the Third Circuit concluded that Facebook "does not stand for the proposition that a dialing system will constitute an [auto-dialer] only if it actually generates random or sequential numbers." Id.

Instead, the Third Circuit concluded—relying on case law from both the Third and Second Circuits—that the relevant question for TCPA liability was whether the equipment has the "*present* capacity to function as an auto-dialer by generating random or sequential telephone numbers and dialing those numbers." Id. at 876 (citing King v Time Warner Cable, 849 F.3d 473, 481 (2d Cir. 2018)). Because the evidence in the record was "conflicting" as to whether the defendant's equipment had the "present capacity . . . to employ random- or sequential-number generation to store or produce telephone numbers[,]" the Court could not determine categorically whether defendant's system qualified as an auto-dialer. Id. at 876.

However, the Third Circuit then addressed the distinct question of whether the defendants *employed* an auto-dialer to place the subject calls to the plaintiffs' cell phones—ultimately holding that "a violation of section 227(b)(1)(A)(iii) requires proof that the calls at issue be made 'using' an [auto-dialer]." Id. at 876-77. The Third Circuit reached this conclusion by looking to the statutory text of the TCPA, the history of decisions interpreting the text, and

the "context and legislative history" of the statute.  Id. at 878-79.  The court noted that the TCPA only prohibited a few specific uses of auto-dialers, including those made to emergency numbers and those that would tie up entire business lines; and that the TCPA's narrow, targeted prohibitions "impos[ed] liability only when . . . telemarketers used their dialing systems to cause the harms the TCPA sought to eliminate."  Id. at 881.  Thus, "for a call to violate section 227(b)(1)(A)," the court held, that call must *actually employ* an auto-dialer's "capacity to use a random or sequential number generator."  Id.

Applying this interpretation, the Third Circuit held that the plaintiffs' TCPA claims failed because "the record establishe[d] that [defendant] did not rely on random- or sequential-number generation when it called them."  Id. at 881-82.  Even if the defendant's dialing system did have "the capacity to generate lists of random or sequential telephone numbers and was thus an ATDS," this was irrelevant because "[defendant] did not use [the system] in this way."  Id. at 882.  Instead, the system "selected a dialing campaign's potential targets from 'specific, curated borrower lists,'" and "[w]hen it placed the calls at issue, [defendant] drew the [plaintiffs'] cellphone numbers from such a list."  Id. at 882.  The Third Circuit, accordingly, awarded summary judgment to the defendants because there was no evidence "that [defendant] made a telephone call *using* an [auto-dialer] in violation of the TCPA."  Id.

The Third Circuit's well-reasoned analysis is instructive in this case.  Here, as in Panzarella, even if Defendant's LiveVox system theoretically had the capacity to store or produce lists of random or sequential phone numbers to be called, there is no evidence showing that Defendants made the subject calls to Plaintiff's cell phone number using such a technique.  Instead, the undisputed evidence shows that Defendants only placed phone calls sourced from a

curated, pre-approved list of customers. (See docket entry no. 91 ¶ 18 ("EGS calls the phone numbers of Credit One customers from a list that Credit One provides.").) Thus, because LiveVox dialed Plaintiff's phone number from a curated list and employed no random- or sequential-number-generating capacity to do so, it did not employ the kind of harmful dialing system that Congress sought to proscribe through the TCPA. See Panzarella, 37 F. 4th at 881-82. Any factual dispute as to the *capacity* of the LiveVox system to employ random or sequential number generation is not material to the resolution of Plaintiff's claim. Plaintiff accordingly cannot satisfy the first element of a TCPA claim, and Defendants are entitled to summary judgment as to each of Plaintiff's TCPA claims.

## CONCLUSION

For the foregoing reasons, Defendants' motions for summary judgment are granted in their entirety, and the Clerk of Court is respectfully directed to enter judgment accordingly. This Memorandum Opinion and Order resolves docket entry numbers 166 and 172.

SO ORDERED.

Dated: New York, New York
September 30, 2022

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge